We're ready to begin our final case. And Mr. McCoy, why don't you proceed when you're ready? Thank you, Your Honor. I'd like to reserve two minutes for a photo. May it please the court. My name is Robert McCoy. I'm a criminal defense practitioner, litigating civil or criminal and civil matters out of St. Paul Courts in Wheeling. And I have the privilege of representing the appellant, Ricky Runner, in this matter today. Mr. Runner was the subject of an illegal search of his vehicle by Moundsville, West Virginia, Police Department officers because they viewed what was clearly a legal item, a stem pipe, in the console of his vehicle and predicated their ensuing search of that vehicle exclusively on the presence of the runner's motion to suppress. We respectfully request that this court reverse the district court order denying that motion and remand the matter for further proceedings. This court has never held or appeared to have even considered the propriety of a search on a plain view basis that was based exclusively on the observation of what is termed paraphernalia. There has always been, in every case out of this circuit, something other than, over and above, the existence of the paraphernalia. Some suspicious activity, the presence of powder, other drugs, a litany of reasons, all of which are furnished or elevate the quantum of evidence that gives their best view officer with... You're saying that the observation of scales or what have you, or cutting agents, etc., even if they were not the contraband itself, that that would not support a plain view search? Yes, Your Honor. Again, it would turn on the specifics, the facts of the syringes and cutting agents, or you saw digital scales and cutting agents, or digital... What I'm wondering is whether you're arguing for an absolute rule that says you have to spot the contraband itself and that it's not enough to scales or cutting agents or syringes. Not at all, Your Honor. There's no suggestion whatsoever in this argument that the contraband itself would have to be observed in order to furnish the officer with probable cause to search. Well, this... One of the deputies at the search was a drug recognition officer. He testified at trial that these pipes are often used for methamphetamine. He had that knowledge. Well, I'd like to bring a couple of things up on that point. One, he claimed to be a drug recognition expert, but he was never offered by the government as a drug recognition expert, and he was certainly never recognized by the court as a drug recognition expert. Did you object to his testimony? I did not, Your Honor, but I wasn't offered the opportunity to object because the government never offered him as an expert. The court never inquired of me as to whether I had an objection to his recognition as such. With respect to Patrolman Schilling's testimony about the stem pipe, certainly a stem pipe is a means of using or smoking illegal narcotics. But in this particular case, that is the sum total of all the evidence that he saw was the presence of the pipe. So why isn't that sufficient? Well, for several reasons. One, the pipe has alternative lawful uses, and the record was with a witness who was brought in who sells thousands of pipes over the years. In fact, he testified that in the eight-month period up in the calendar year 2020, the eight-month period between January and August of that year, just before when the suppression hearing in this matter was held, that he had sold a thousand pipes in his CBD store. The officer testified he wasn't aware of that use, but he did testify, as Judge Floyd indicated, that based on experience and training, that this was a drug paraphernalia item. There's an Eighth Circuit case, Van Zee, that seems to be almost identical to this case. Regrettably, I'm not agreeing with that Eighth Circuit. The pipe issue here is also used commonly, according to the witness who testified on Mr. Runner's behalf, the fact witness, Mr. Schmidt, is commonly used to smoke CBD oil. And with the advent of CBD sales to sell hemp and CBD oil for smoking, what might have constituted probable cause 30 years ago certainly doesn't rise to that level today, without more. Hold on now. I mean, why did they need to go beyond probable cause, which is not that high of a showing? Seems like me, you're almost arguing that there's a knowledge requirement on behalf of the police officer. Your Honor, what I'm suggesting is that the officer, the quantum of proof in the officer's possession should certainly exceed merely observing a piece of paraphernalia. Paraphernalia is not unlawful to possess under West Virginia law. In fact, it's not even unlawful to sell. And without more, and every case from this circuit includes a with more component. So for example, it's an unpublished disposition, the closest I could find- Well, is there a case that's found where you have a single item such as this, that that failed to show probable cause? No, I guess that's the reverse side of the question. No, Your Honor, but every case that was upheld, where the search was upheld, there was a with more quantum of evidence. It's, it's, are you familiar with the Eighth Circuit's decision in Munoz, or Munis? Yes, Your Honor. Well, I mean, that case seems to be pretty close to this one as well. It's not as factually on Band C, which is the published opinion. But the Eighth Circuit seemed to be of the view that a circumstance like this was sufficient in and of itself. But if, if, if this court adopts a standard that just viewing, for example, a pipe in the console of a vehicle without more justifies a search, then it will be making new law relative to the opinions that it is handed down thus far. And it would also, so for example, if someone had a syringe in the console of a vehicle who was an insulin-dependent diabetic. Well, did the, did the officer testify here about what he, his training was? Yes, he, yes, he did. He said that he, yes, he said that he was acquainted with stem pipes being used to smoke. So you have more here than just the observation of a pipe. You have the additional knowledge testimony from the training and experience standpoint of the police officer. Yes, and it's not, it's not a contested point that a stem pipe can be used to smoke methamphetamine, but it has other lawful uses. So for example, a syringe in the console of a vehicle could be used to inject heroin or other illicit narcotics, but could also have a lawful purpose in the sense that it could be used for dispensing insulin. You know, similarly, rolling papers, for example, can be used to roll marijuana into cigarettes, loose marijuana and roll it into cigarettes. It can also be used to roll tobacco. You could have a firearm, for example, in the console of the vehicle. And a firearm could be used in a robbery or anything else. Okay. It could be used in a homicide, but without more, that firearm does not rise to the level of probable cause just by itself. And in this case, the district court did everything that it could to cobble together as innocuous, innocent facts as possible, try to sew those into some nefarious conclusions. If these people were at the Walmart parking lot at 1.30 in the morning, when the store was open, they were patronizing the store. So, I mean, you could take the pipe. I mean, if you want to say that the pipe is, by itself, rises to the level of probable cause sufficient to justify the search, that would also authorize law enforcement officers to go into vehicles, if they see, for example, other innocent things without any additional evidence, rolling papers, syringe, firearm, and you'll get the same result that the officers did in this case. So, I wish to point out that the government has attempted to elaborate on the district court's finding by saying that there's more than just the pipe. There's repeated references to the circumstances that bring the officers to the parking lot in the first place, which is the anonymous call. That is zero weight. It was an anonymous call, and the caller's information was not corroborated in any shape or form. It was, in fact, contradicted in virtually every respect. The only, again, the only evidence that justified the search was the officer's observation of the pipe, that and that alone. So, if that becomes the basis for... Why wouldn't the 9-1-1 call be something more? That's an excellent question, and the answer is that the caller's information was, first of all, anonymous, and furnished no evidence at all that was corroborated in any fashion at all beyond the fact that there was a woman exiting a blue Volkswagen. There was, in fact, the caller's information by the officers... But the 9-1-1 call said, talked about a person shooting up. How much detail was there in the 9-1-1 call? Based on the record and the officer's testimony, that was it. There's a woman in a blue Volkswagen in the Walmart parking lot shooting up. Well, all right, but, I mean, he wasn't... The 9-1-1 call wasn't about somebody shooting up in Alaska. The 9-1-1 call must have given the location. That's true, Your Honor, but this court said in Foster and some other cases that, you know, proof of... Innocent facts in and of themselves don't give rise to finding a probable cause. No, but the question I'm having is that you say all of these something-mores were just make-weight arguments and everything, but, I mean, this search took place at 2 a.m. in the morning in a parking lot. There was a 9-1-1 call about a person shooting up, and there were track marks on the passenger's arm. I don't understand why that wouldn't provide context for the pipe. I mean, that's a very late hour in a very isolated location, and the only reason the officers were there looking into the car had to do with the 9-1-1 call. Your Honor, the caller's information was contradicted in every imaginable respect. First of all, it wasn't an isolated location. It was a Walmart. It was in the parking lot of a rather sizable shopping mall, and the Walmart itself was open for business. There's nothing particularly nefarious about patronizing Walmart at that time of the morning. It was a closed business. That might be a different story. It might compel a different conclusion, but this is a store that was open for business. It's true that if you are doing this, if you're into shooting up, and the pipe is used for nefarious purposes, you're less likely to be observed if you're doing it at 2 a.m. in the morning. Of course, part of the deal here, part of what the occupants of the car were considering, is that they wanted to conduct their activity in the greatest secrecy possible, and 2 a.m. would seem to be a good hour to do that. Certainly, that's true, but in this particular case, the young lady in the car said she was applying her makeup. The officers confirmed that she was made up, and they observed makeup bags in the car. The officers acknowledged that everything supplied to them by the anonymous caller, other than the location of the car and that a woman was there, was contradicted by what they had observed. Someone who's just presumably injected narcotics would begin to exhibit the symptoms of someone who was impaired, and the officers acknowledged repeatedly that this woman was not only not impaired, she was not evasive, she was engaging, she spoke to them. You can watch the appendix, there's a video. She's very friendly, she talks to them, she's cooperative, she's not plainly not high. Everything that the caller said was contradicted by what the officers had observed, and they apparently were not satisfied with her behavior. The pipe itself contradicts what the caller said. Someone doesn't use a pipe to shoot up. The caller said someone was shooting up in the car, injecting narcotics, presumably, and all that was observed was the pipe. Is the district court due some deference here? I mean, you're drawing one set of inferences from the facts, and the district court apparently drew another set of inferences from the facts, and isn't the person that actually conducted the hearing, the suppression hearing, due some deference here? Yes, there's a clearly erroneous standard on factual findings. It's certainly true, but the thrust of this argument is based upon the legal notion that the pipe itself furnished probable cause. That was the crux of the district court's testimony to the officers, the acknowledgement that the pipe and the pipe alone and nothing more furnished the basis for the search. That was the officers' acknowledgement that they had nothing else that justified conducting that search. Well, all I can say is the officers didn't just parachute into the parking lot. They were there because of a particular call, and the caller had suspicious activity. I mean, that was the whole reason they were there. They didn't just happen upon this car. Respectfully, the caller's information is fiction. There's nothing that the caller said that was corroborated in any shape or form. Why wouldn't the pipe be a corroborating factor? Because the caller said that the pipe was a corroborating factor. All right, counsel, we appreciate your argument, and you've also got some rebuttal time that you've reserved, and we're now prepared to hear from Ms. Lemon. Thank you very much. May it please the court, I'm Denae DeMacy Lemon, representing the United States in this matter. When you view the of the specific context of this case, as opposed to the general proposition that there's just a pipe in a car, then the evidence does not show a definitive mistake was made, a conviction that a definitive mistake was made by the lower courts here. The incriminating nature of the pipe in this case was immediately apparent to officers based upon their testimony and based upon their law enforcement officers walking down the street and just seeing a pipe on the sidewalk. We have an anonymous caller, granted that that caller was anonymous, but the tip was partially corroborated here. The caller states that they see a blue Volkswagen. What does police find? A blue Volkswagen. The caller states that the person in the vehicle injecting drugs is a female. They find a blue Volkswagen with a female in it. This is 145 in the morning. She identifies herself as Ms. Garlow. She has what she testifies as old track marks on her arm. So there's some type of indicia of some type of drug use, whether it was recent or not. Corporal Schilling on Joint Appendix page 120 states that when he walks around the car, he sees a container with powder. He asks about it. She states that it's a makeup bag. And the tipster observes drug use in some type of form. And after the search, there's evidence of drug use in the car. In that makeup bag, they find Xanax pills and what they suspect to be crystal methamphetamine. So why do you make the officer mute checks? That's how you pronounce it. Testimony page 36 of the appendix. And counsel has gone through with him the encounter with the young lady in this case, gone through most of the things you've recited, and then he asked him, but would you agree up to that point in time, you certainly didn't have any basis to search the vehicle? And he answers at that time, no. So are we entitled to look at any of the circumstances other than the presence of the pipe and the officer's knowledge and training testimony? I believe so, because when Corporal Mucek made a circle around the vehicle, he did not see anything. It was Corporal Schilling. He came back to Ms. Garlow, who he agrees did not appear to be under the influence of anything. But we do know at that So based upon the evidence of what the officers have there, they're making a conscious assessment of this tip, because it technically could have been, we don't know what the caller saw, it technically could have been Mr. Runner in the car doing some type of narcotics. So the tip, I believe that we need to look at, because there's some type of additional reliability. I'm sorry. Let me ask it a different way. Sure. Do you need anything else other than sighting of the glass stem and the officer's knowledge of its use? Or not knowledge, but education and training about what they're used for? Given the context of this case, no. They're in a place where they're lawfully allowed to be. We know from Katz that when anybody exposes to the public, even in his own home or office, is not subject to Fourth Amendment protections, they see this pipe, they both testify that this on their objective training, this probable cause standard of their flexible knowledge and training at the time, they both testify that they have a reasonable belief that this pipe is contraband or evidence of a crime. Can't we take into consideration how the officers came to be there? I'm sorry. I didn't hear the first part of the question, please. I'm sorry. Can't we take into consideration how, why, and how the officers were there? What led to them being there? I mean, that's part of the narrative and it's part of the story. Right. See, that's where my argument is that if this case comes down to context, they're not just there because they're there. They're there because of an anonymous caller at 1.45 a.m. making a complaint about someone injecting drugs in a vehicle. So when you take the context of this case and you take officers' training and experience in this case, even given Mr. Schmidt's testimony on the record that the most common way, which Mr. Schmidt was the defense's witness, the most common way, he says, to ingest CBD oil is through oral drops. He admits that hemp flour is not used for smoking, but some hemp oils can be used for smoking. So officers' training and experience there, they're not aware of smoking CBD oil through this type of pipe. And I believe that Corporal Schilling stated on page 71 of the record that he's aware of bongs used to smoke oil, not glass pipes used to smoke oil. And he had certain training with respect to these glass pipes. And so there, at that scene, on that location, at that time, these officers believe, based on their training and experience, that this constitutes evidence of a crime. This is not foster. I take it that you believe that probable cause is just the probability of criminality. Is that correct? It's a probability. They don't have to know at the scene. Texas v. Brown's Green Balloon tells us that they don't have to actually know at the time that they see something that it's absolutely 100% used for illegal drugs versus CBD oil. They're reasonable as long as they have probable cause to associate that pipe with criminal activity. And in Moundsville, West Virginia, at 1.45 a.m. in the morning, based on the record of what they saw, they did believe that they had probable cause to seize that because the incriminating nature was immediately apparent to them. In West Virginia, CBD oil is only legal to a certain percent. So THC is only legal to about 0.3%. Officers would have no way of knowing whether or not that pipe was used to smoke something legal or illegal based on that THC percentage when they were standing outside of the car. Are you familiar with the Eighth Circuit's decision in Band C? Band C? B-A-N, separate word, Z-E-E. No, Your Honor, I apologize. I'm not. It's a published opinion that's almost identical to this case in fines for the government, almost on exactly the same evidence. This, Mr. McCoy, akin this case to the Foster case. And I want to state that this case is distinguishable. The facts in this case, the context are distinguishable. This isn't a set of innocent facts. Mr. Foster was sitting in a vehicle across from a restaurant where a detective came out at 1 p.m. in the afternoon. He was having lunch with his wife. It's not some type of high-crime area. They approached Mr. Foster. The detective knows Mr. Foster's up to no good from some type of previous arrests, or he believes that Mr. Foster's probably up to no good. All I want to make clear is I do not believe, or do you believe, that we are precluded from taking into account the 911 call and the whole question of why the officers were there in the first place and the whole question of what the hour was. In other words, it's not just, to me, what's important is it's not just a pipe in isolation. It's a pipe surrounded by a context. And the context here is not especially favorable to the defendant. But there's nothing that precludes us from taking into account that context, is there, in terms of a plain view search. I mean, you could, I suppose the argument can be made, oh no, the only thing that you're able to take into account in a plain view search is what you see in plain view and whether that was incriminating or not. And the question that I have is why in a plain view search can't the incriminating nature of the pipe be informed by context? It's just unnatural to isolate one part of a sequence of events from others. And I think your worthy opponent is to say this is the pipe alone and that's all you can look at. And what I'm suggesting is that, you know, basically when human, when officers undertake a plain view search, what they see in plain view that gives them probable cause to search is necessarily informed by what was on beforehand, which is, you know, why are they there and where are they? Those kinds of things. And I'm just, I assume that's your view. Yes, Your Honor. That's why I mentioned the context. It's kind of why I mentioned Foster, because the Foster context of that case is different than the context of this case. And based upon all of the evidence, the totality of the circumstances here, the 145 a.m., the phone call, the easily identifiable Volkswagen and female, the old track marks, the container of powder, and then the officer's knowledge. But all I'm saying is that if they had arrived suddenly in a parking lot at 1 p.m. in the afternoon, and they've seen the same thing inside the car, that this would be a very different case, wouldn't it not? Would it not? I agree. I agree that it would be a different case because I think it boils down to context. If this were 1 o'clock in the afternoon, let's take the glass pipe itself. It's used to smoke something. If it's 1 o'clock in the afternoon somewhere else, somewhere maybe in a store, if you can go into a CBD oil store, and there's a bunch of glass pipes on the counter, on the table for sale, they're illegally for sale, that's nature's not incriminating. It's not immediately apparent that it's incriminating and used in a crime. But pluck that same pipe, take it off the shelf, and put it in Mr. Runner's car with the facts that we have now and the context that we have now, now it is immediately apparent. No, and what I think you're driving at, and I think, is that you cannot get away from context because that is what the officers are acting on. That is what any reasonable officer would act on, context. And, you know, as I say, without the 9-1-1 call and in the middle of the afternoon and broad daylight, it's a different case because there's a different context. That is what I'm getting at. Thank you, Your Honor. This is about context here. The tip was partially corroborated. This isn't a set of just innocent facts here. And there was indicia of drug activity here in this case. We have cases that involve even a cup of water. It depends on the context. U.S. versus Turner, the defendant cited, it's actually a civil forfeiture complaint of a Corvette. But the whole impetus for that search of the officer following that woman out of a convenience store was that she got a cup of water. And he went out there and in his training and experience, he believed that the cup of water was used to cook drugs. He looked around and saw what he believed were drug items once he accosted her. So that's an innocuous item. So it's based upon the context of what's going on here in this case. And I don't think that we can just ignore the 9-1-1 call because it wasn't fully corroborated. It was partially corroborated here. Okay. Is there anything further that you have? No, Your Honor. Other than the cases I cited in my brief, as we know, an innocent explanation here because it could possibly be used for CBD oil does not vitiate properly established probable cause. And again, there's no clear error because the entire evidence, including the 9-1-1 call, including officer's testimony, and including Mr. Schmidt's testimony, does not show a definite conviction that a mistake was made by the lower courts here. Thank you so much. All right. Thank you. Hold on a minute. I want to see if either of my colleagues has further questions for you. Judge Agee, do you have any questions? No, sir. Judge Floyd, do you have further questions? No, sir. All right. We thank you very much. And Mr. McCoy, you have some rebuttal time, so we'd be happy to hear from you in rebuttal. Thank you, Your Honor. Your Honor, the court seems to be concerned about the context, and I think that's a very fair consideration. And I think the context can certainly take something that's otherwise an innocuous and innocent fact and elevate the degree of suspicion to the probable cause level. But in this particular case, on these particular facts, it's not justified. The context doesn't do anything to elevate the amount of proof and possession of the officers. It's an anonymous call. The caller did not affix her or his name to the call. They didn't back up the allegation with the imprimatur of their identity. The caller's information corroborated purely innocent facts of a female in a blue Volkswagen in the Walmart parking lot. Those are innocent facts. The business is open. People who work shift work shop at Walmart at that time of the day or night, or all times of the day and night, including at that time of the morning. People who are insomniacs go out and do their shopping at times. People who don't like to be around other people who go and do their shopping at that time. There's nothing nefarious about being in the Walmart parking lot at that hour of the morning. Do we know where in the world this person is? One can observe that from the video, Your Honor. It's in the joint appendix. It's not that far from the entrance. It's fairly close to the entrance to the store. What we're going to do if this search is upheld is put individuals who patronize the Walmart in for other activities. If there was more in context here, that might justify the search. But again, it warrants repeating that the caller's information was contradicted in every respect. The female was not under the influence of narcotics. There was no indicia of injecting drugs. She wasn't high. She wasn't evasive. Again, Your Honor, put your finger right on it when you said that this is about the pipe. It's just about the pipe. You can use context, but in this particular case, the context does nothing to elevate the degree of suspicion that would have justified this search. We ask you respectfully to reverse the question. We thank you very much. I want to thank both of you for your argument. You've been a great assistance to the court. We wish you a pleasant afternoon. I'll ask our courtroom deputy to adjourn court and to put us in our conference. Judge Wilkinson, before we go, did you want to court-appoint McCoy as well? I certainly do want to. Mr. McCoy, I really want to tell you how much we appreciate your taking on the case in a court-appointed capacity because we really do depend on our court-appointed attorneys to make a fine argument, and you've certainly done that appreciate that very much. Thank you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Henry F. Floyd